## Anderson v. East Suburban Multilist Real Estate Brokers, Inc.

*George Shorall,* for plaintiff.

*Evashavik and Capone,* for defendant.

SMITH, J., May 23, 1967.—On December 8, 1966, plaintiff, Harriette Anderson, trading and doing business as Hart Real Estate, brought an action in equity against the East Suburban Multilist Real Estate Brokers, Inc. Defendant filed a preliminary objection in the nature of a demurrer to plaintiff's complaint. Plaintiff filed what she called an "answer to preliminary objection".

In considering the preliminary objection of defendant, we must consider as true every averment of fact in the complaint which is well pleaded as well as all reasonable inferences therefrom.

Plaintiff, Harriette F. Anderson, (hereafter Anderson) is a real estate broker, duly licensed by the Commonwealth of Pennsylvania, who is doing business at 108 Nelbon Avenue, Pittsburgh, Pa., 15235, under the trade name of Hart Realty Company. On three separate occasions, Anderson made application to defend-

ant, East Suburban Multilist Real Estate Brokers, Inc., (hereinafter Multilist), a Pennsylvania non-profit corporation, for membership, and on each of these occasions she avers that "her applications for membership in the defendant have not been accepted because of arbitrary and discriminating policies and practices of the defendant and its members which are designed to, and do prevent the admission to membership in defendant of any women".

Because of her failure to join defendant Multilist, plaintiff avers that her ability to operate and compete as a real estate broker has been severely reduced, all of which resulted in an extreme financial burden and hardship to her prejudice and irreparable injury.

At the time of the argument on the preliminary objection of Multilist, the parties submitted to the court a document which they agreed is the bylaws of Multilist. According to the bylaws of Multilist, article II—membership, the qualifications for membership are as follows:

"ARTICLE I—NAME

"*Section 1.* This Association shall be named East Suburban Multilist Real Estate Brokers, Inc".

"ARTICLE II—MEMBERSHIP

"*Section 1.* The Membership of this Association shall consist of individuals only, elected to Membership after qualifying as hereinafter set forth.

"*Section 2.* To qualify for Membership, an applicant, in addition to meeting other qualifications that may be determined from time to time by the Board of Directors and approved by the Membership at a regular or special meeting of the Association, must be:

"A. A Real Estate Broker licensed by the Commonwealth of Pennsylvania; and,

"B. A Class A Member in good standing of a Board of Realtors affiliated with the National Association of Real Estate Boards; and,

"C. Of good character and good reputation".

Plaintiff has met all the qualifications for membership in Multilist.

Multilist is a nonprofit corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, all of whose members must be real estate brokers duly licensed by the Commonwealth of Pennsylvania. While Multilist is a nonprofit corporation, it is clear from a reading of the bylaws that it was incorporated as an entity ancillary to the members' regular business of being real estate brokers for profit. A reading of the bylaws leads us to but one conclusion: the main purpose, if not the sole purpose, for the existence of Multilist is to improve and increase the members' business as licensed real estate brokers. To this end, Multilist has been created under and by an instrumentality of the Commonwealth of Pennsylvania to supplement an occupation that is strictly regulated and licensed by the laws of the same Commonwealth.

Multilist primarily functions as a receiving and disseminating center for listings of real estate within a designated territory. When a listing member receives a listing for the sale of property (presumably an exclusive listing) he then sends the required information to Multilist, which then causes the information to be disseminated among all of the members. Thereafter, any member of Multilist is at liberty to act as a licensed broker under the laws of the Commonwealth in an attempt to effectuate a sale. The advantage of this type of listing both to the seller and to the member brokers is obvious. The seller has the advantage of many brokers attempting to sell his property and the broker has the advantage of having available many listings for prospective buyers.

It is obvious that it is the intent of the bylaws of Multilist to limit the members from doing business

with licensed brokers without the corporate structure and to encourage the transaction of business with those licensed brokers who are members. That Multilist is, and was intended to be, an organization to restrain trade within the real estate brokerage field is clear. The following demonstrate this to be the case:

1. "Sales through non-members of the Association are not encouraged, but should a member of the Multilist Service sell a property listed with the Multilist Service through a non-member, then three (3%) per cent of the gross commission shall be paid to the Association and the balance of the seller's share divided between the Multilist member and the non-member": Bylaws, art. XXI, (1).

2. "The only signs to be placed on any property listed with the Multilist Service shall be the sign of the Listing Member": Bylaws, art. XXI, (N).

3. "The only listing a member is permitted to extend cooperation to a non-member is the member's own listing": Bylaws, art. XXI, (R). And even when he does extend "cooperation" to a nonmember, the Multilist is entitled under the bylaws to part of the commission: Bylaws, art. XXI, (I). A member cannot extend "cooperation" to listing that he receives through the Multilist where he is not the listing member.

4. Under the heading "Statement of Policy", the bylaws of Multilist provide that: "Every Multilist Member shall recommend the use of the Multilist Service. It shall be deemed unethical and a violation of the spirit of Multiple Listing for any member of the Multilist Service or his salesman to discourage or advise against the use of the Multilisting to the public who have listed or who are contemplating listing with the Service. Any effort or act which withholds from the other members of any rights or benefits is a viola-

tion of the spirit of Multiple Listings": Art. XXII, sec. 1.

5. Article XXI, (U), of the bylaws of Multilist provides for the assessment of a fine of not less than $500 or expulsion from the association where the member is responsible for unauthorized distribution of multilist property, which includes listing sheets, information reports, lock box keys, etc.

6. While the bylaws do not specifically state that a listing member of Multilist must obtain exclusive sales agreements with the sellers, it is clear from the language of the bylaws that this is what is encouraged among the members. The bylaws speak of special fees where there are exceptions in the sales agreements, and one provision provides for a listing fee in the event the sales agreement does not fully comply with the provisions of the bylaws. Article XXI, sec. 2, (A), speaks of listings and states "All exclusive listings shall be . . ." Subparagraph J is captioned "Sale After Expiration of Exclusive Contract" and deals with a division of fees among members, and there is no reference to how fees would be handled if the contract were not an exclusive one.

We have examined the bylaws of Multilist and have come to the conclusion that it is nothing more than an entity whose members have banded together for the purpose of promoting their individual business interests as real estate brokers licensed by the Commonwealth of Pennsylvania. We find nothing objectionable to the joining together of persons who have mutual business interest for their own protection and the promotion of financial gain, so long as they do not violate the laws or public policy of the United States or the Commonwealth of Pennsylvania.

Defendant's preliminary objection presents for our determination the following issue:

May a nonprofit corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania whose purpose is to promote and protect the interest of real estate brokers duly licensed under the laws of the Commonwealth of Pennsylvania deny membership to a person who fully complies with the requirements contained in the bylaws merely because the applicant for membership is of the female sex?

It is the considered opinion of this court that such a corporation may not so discriminate. Many wars have been fought in the centuries past, are still being fought and no doubt will continue to be fought in the future over the rights of peoples of various classes, groups, races and sexes. One such war was the battle of women for their political, economic and social rights in our society. Many women, including Mrs. Anderson, contend that the war is still going on today. While it is true that there are many nations in the world today where women have not received equal rights, either political or social, with man, nevertheless, in this country the war was fought many decades ago with victory going to all of society when the tide of battle resulted in the enactment of legislation permitting women equal rights with men.

The Constitution of the United States, in the Nineteenth Amendment, provides that:

"The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex".

The Federal Civil Rights Act of July 2, 1964, 78 Stat. 255, provides, in 42 U. S. C. §2000e-2, that it shall be an unlawful employment practice for an employer or employment agency to discriminate on account of sex.

The Constitution of the Commonwealth of Pennsylvania provides, in article 10, sec. 3, that:

"Women of twenty-one years of age and upwards, shall be eligible to any office of control or management under the school laws of this State".

The legislature of this Commonwealth has enacted various laws dealing with the rights of woman:

The Equal Pay Law, of December 17, 1959, P. L. 1913, sec. 3, 43 PS §336.3, provides, regarding wages, that "No employer shall discriminate in any place of employment between employes on the basis of sex . . ."

Both the general corporate law and the Business Corporation Law of May 5, 1933, P. L. 364, art. IV, sec. 409, 15 PS §1409, provide that women may serve as directors and officers of corporations.

Even more relevant to the present discussion is the Nonprofit Corporation Law of May 5, 1933, P. L. 289, art. V, sec. 508, 15 PS §7508, which provides that "Women, married or single, may serve as directors and officers of nonprofit corporations".

The Nonprofit Corporation Law also provides, in art. VI, sec. 601, 15 PS §7601, that

"Membership in all nonprofit corporations shall be of such classes, and shall be governed by such rules of admission, retention, suspension and expulsion, as the articles or by-laws shall prescribe, except that all such rules shall be reasonable, germane to the purpose or purposes of the corporation, and equally enforced as to all members of the same class".

The "rule" which precludes Mrs. Anderson from membership in Multilist, a nonprofit corporation, is not a part of the articles or bylaws of defendant, and even if it were, it is neither reasonable nor germane to the purposes of such a corporation.

It is the opinion of this court that it is the public policy of this Nation and this State that a person should not be discriminated against in the pursuit of her livelihood on the basis of sex, and that where there

is such discrimination, without reasonable justification therefor, through the action of an instrumentality of the State or through the operation of the laws of the State, then such discrimination is illegal, void and, therefore, actionable.

Plaintiff is a licensed real estate broker who has complied with all the requirements of the bylaws of defendant but who has been refused membership in the defendant corporation merely because of her sex. Defendant is a corporation created under and by virtue of authority of the laws of the Commonwealth of Pennsylvania whose membership is limited to other members of plaintiff's profession and who are equally governed and licensed by the laws of the Commonwealth of Pennsylvania. The purpose of defendant is to act effectively as a clearinghouse for the listings of properties exclusively, if possible, with the members of defendant to the exclusion of nonmembers. The exclusion of plaintiff from membership in defendant, and the subsequent exclusion of plaintiff from participating with her fellow real estate brokers in the real estate business merely because of her sex is contrary to the public policy and, therefore, the laws of the Commonwealth of Pennsylvania.

Inasmuch as it is the opinion of this court that plaintiff's complaint sets forth a prima facie cause of action, the court will dismiss defendant's preliminary objection. Defendant is granted 20 days in which to file a responsive pleading.

### ORDER OF COURT

And now, May 23, 1967, upon consideration of defendant's preliminary objection, and the briefs and argument of the parties in regard thereto, it is ordered, adjudged and decreed that for the reasons set out in the foregoing opinion, defendant's preliminary objection be and the same is hereby dismissed.